UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
RON WILSON,

                       Plaintiff,                   Case No. 21 Civ. 3716

      -against-

SUFFOLK COUNTY, New York,           **COMPLAINT**
TIMOTHY SINI, Individually, MARY
SKIBER, Individually, STUART CAMERON,
Individually, NICHOLAS LORUSSO,        Jury Trial Demanded
Individually, and JOHN DOES 1-10,
Individually,
                      Defendants.
---------------------------------------------------------x

      Plaintiff, RON WILSON, by and through his attorneys, as and for his complaint states as follows:

## NATURE OF THE ACTION

1.      This is an action for compensatory, declaratory, and injunctive relief, to include presumed monetary damages in at least a nominal amount, punitive damages, economic damages, costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 U.S.C. §1988, for continuing and imminent irreparable harm to Plaintiff and all similarly situated individuals in New York State arising from violations to their constitutional rights as protected by the Fourth, Fifth, and Fourteenth Amendments.

## JURISDICTION AND VENUE

2.      Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the United States Constitution and laws of the United States, and under 28 U.S.C.

§ 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.

3. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

5. Plaintiff, RON WILSON ("Plaintiff") is a United States citizen with a residence in Nassau County, New York.

6. Defendant, SUFFOLK COUNTY, New York (hereinafter "Suffolk"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State. Defendant "Suffolk County" as identified herein encompasses Suffolk County law enforcement officers, as well as staff of the Suffolk County District Attorney's office.

7. Defendant, TIMOTHY SINI ("DA Sini"), sued herein in his individual capacity, is the District Attorney for Suffolk County, New York. In that capacity, DA Sini creates, enacts, and implements policies and procedures for the County of Suffolk by virtue of his position in the District Attorney's Office.

8. Defendant, MARY SKIBER ("ADA Skiber"), sued herein in her individual capacity, is an Assistant District Attorney with the Suffolk County District Attorney's Office. ADA Skiber has the authority to create, enact, and/or implement policies and procedures for the County of Suffolk by virtue of her position in the District Attorney's Office.

9.     Defendant, STUART CAMERON ("Comm. Cameron"), sued herein in his individual capacity, is the Acting Police Commissioner for the Suffolk County Police Department.

10.     In that capacity, Comm. Cameron creates, enacts, and implements policies and procedures for the County of Suffolk by virtue of his position.

11.     Defendant NICHOLAS LORUSSO, ("Inv. LoRusso"), sued herein in his individual capacity, is employed with the Suffolk County Police Department.

12.     Defendant JOHN DOE 1 ("John Doe 1"), sued herein in his individual capacity, is the Detective Lieutenant, C.O. 3410 employed with the Suffolk County Police Department.

13.     Doe 1 is an agent, servant, and employee of Suffolk County working in active concert with the individually named Defendants to violate the constitutional rights of Plaintiff and all other similarly situated individuals.

14.     Defendants JOHN DOES 2-10 ("John Does 2-10") are sued herein in their individual capacities.

15.     John Does 2-10 are agents, servants, employees and/or staff of Suffolk County and/or other governmental and/or private agencies working in active concert with Defendants to violate the constitutional rights of Plaintiff and all other similarly situated individuals.

## MATERIAL FACTS

### Overview of the Litigation

16.     Defendant Suffolk County, New York, by and through the individually named defendants, John Doe 1, John Does 2-10, and other unidentified law enforcement officers, prosecutors, civilian investigators, and/or other governmental and/or private agencies are

working in active concert with one another to violate the constitutional rights of Plaintiff and all other similarly situated individuals.

17. DA Sini, Comm. Cameron, ADA Skiber, Inv. LoRusso, and John Does 1-10 have enacted and are presently implementing and enforcing a policy and procedure that wrongfully, knowingly, and maliciously (i) categorizes the Delta Level Defense CT4-2A Other Firearm ("CT4-2A") as contraband; (ii) criminalizes the lawful purchase, receipt, transfer, and possession of the CT4-2A; (iii) seeks the permanent confiscation of all Delta Level Defense CT4-2A Other Firearms that were legally purchased by Plaintiff and hundreds of other similarly situated individuals from a federally license firearms dealer ("FFL") and firearms store located in  Suffolk County after a federal background check through the National Instant Criminal Background Check System ("NICS"); and (iv) in fact, has already caused the unlawful confiscation of multiple numbers of Delta Level Defense CT4-2A Other Firearms from Plaintiff and other similarly situated individuals who reside within and outside of Suffolk County.

18. As detailed herein, Plaintiff and thousands of similarly situated individuals throughout New York State and in 49 of the 50 United States, legally purchased and own the Delta Level Defense CT4-2A Other Firearm.

19. There is no law – whether under federal or that created by the New York State Legislature – that criminalizes the purchase, possession, or ownership of the Delta Level Defense CT4-2A Other Firearm.

20. Suffolk County and the above-named and referenced defendants have created and are implementing and enforcing a policy that cannot be found in the New York Penal Law (the "Policy").

21.     The Policy intentionally and knowingly mischaracterizes the Delta Level Defense CT4-2A Other Firearm as an unlawful firearm – contraband – subjecting the purchasers and possessors to arrest, incarceration, and prosecution.

22.     As detailed more fully below, in enforcing and implementing the Policy, Defendants drafted and mailed out a form letter (the "Letter") to hundreds of individuals who purchased a Delta Level Defense CT4-2A Other Firearm between 2018 and November 2020.

23.     The first batch of the Letter, dated May 20, 2021, was mailed out and received in and around the same date.

24.     The second batch of the Letter, dated June 16, 2021, was mailed out and received in and around the same date.

25.     Each batch of the Letter was mailed to hundreds of individuals who lawfully purchased a Delta Level Defense CT4-2A Other Firearm from Jerry's Firearms in Suffolk County, New York after a federal background check through the National Instant Criminal Background Check System.

26.     Defendants' Letter targeted hundreds of lawful purchasers in numerous jurisdictions, both within Suffolk County and outside of Suffolk County, including *inter alia*, Nassau County, Putnam County, Sullivan County, Westchester County, and as far away as Pennsylvania.

27.     Defendants' Letter targeted hundreds of lawful purchasers in numerous jurisdictions, which under color of law and police authority, falsely informed that the Delta Level Defense CT4-2A Other Firearm they purchased was contraband and directed that the CT4-2A be surrendered to them under threat of arrest and prosecution.

28. The Delta Level Defense CT4-2A Other Firearm is lawfully sold, purchased, owned, and possessed in 49 of the 50 United States.

29. Suffolk County and its Policy constitutes an outlier. The Delta Level Defense CT4-2A Other Firearm is lawfully sold, purchased, and possessed in Nassau County.

30. As discussed in detail below, all defendants, those whose identifies are known those yet to be identified, knowingly, intentionally, and unlawfully confiscated and/or caused the confiscation of CT4-2A Other Firearms owned by Plaintiff and similarly situated individuals that were lawfully purchased from an FFL in Suffolk County after a federal background check through NICS.

**"THE POLICY" OF SUFFOLK COUNTY POLICE AND DISTRICT ATTORNEY**

31. In his position as the Suffolk County District Attorney, DA Sini, *inter alia*, personally supervises, provides legal advice and direction to, and directs the course of action of his prosecutors and the Suffolk County law enforcement officers and/or investigators assigned to the District Attorney's Office and such investigations, including the investigation and law enforcement officers/investigators referenced herein.

32. In her position as an Assistant District Attorney with the Suffolk County District Attorney's Office, ADA Skiber, *inter alia*, personally supervises, provides legal advice and direction to, and directs the course of action of conducted by the Suffolk County law enforcement officers and/or investigators assigned to the District Attorney's Office and such investigations, including the investigation detailed herein, Inv. LoRusso, and one or more of the John Does referenced herein.

33. All of the individually named defendants and unidentified John Does 2-10 have personal involvement in the oversight, implementation, and enforcement of Suffolk County's

policy and procedure of improperly categorizing the CT4-2A as contraband, criminalizing the purchase, receipt, and/or possession of the CT4-2A, and seizing CT4-2As from their lawful owners, conducted without compensation and/or due process, as they did to Plaintiff.

34.     In his position as the District Attorney, DA Sini supervises, provides legal advice and direction to, and/or directs the course of investigations conducted by his prosecutors, the Suffolk County law enforcement officers and/or investigators assigned to the District Attorney's Office, which include Inv. Nicholas LoRusso and one or more of the John Does sued herein.

35.     In her position as an Assistant District Attorney, ADA Skiber supervises, provides legal advice and direction to, and/or directs the course of investigations conducted by the Suffolk County law enforcement officers and/or investigators assigned to the District Attorney's Office, which include Inv. Nicholas LoRusso and one or more of the John Does sued herein.

36.     The DA Section of the Suffolk County Police Department ("SCPD") is assigned to the District Attorney's Office to, *inter alia*, undertake investigations initiated by certain prosecutors in the DA's Office, including and with the knowledge, approval, and personal involvement of DA Sini.

37.     Defendant Nicholas LoRusso, an investigator with the SCPD, is assigned to the District Attorney Section of the SCPD (the "DA Section").

38.     One or more John Does 2-10 are also assigned to the DA Section of the SCPD.

39.     John Doe 1 is the Det. Lt. of the DA Section of the SCPD.

40.     In their assignment to the Suffolk County DA's Office, it is the duty and responsibility, and within the scope of their employment, for John Doe 1, Inv. LoRusso, and such other assigned John Does to implement, enforce, and work with, for, and under the direction, supervision, and control of, ADA Skiber, DA Sini, and one or more John Doe defendants.

41.     In their assignment to the DA Section, John Doe 1, Inv. LoRusso, and one or more John Does 2-10 also continue to be under the control and direction of Comm. Cameron and one or more John Does.

42.     ADA Skiber and SCPD Defendants assigned to the DA Section, with the direct, personal knowledge and consent of DA Timothy Sini, implemented, directed, and oversaw an investigation involving the sale of the Delta Level Defense CT4-2A Other Firearm by a federally licenses firearms dealer in Suffolk County.

43.     In and between November 2020 and July 2021 and continuing to date, ADA Skiber, in conjunction with and with the direct, personal knowledge, assistance, and consent of DA Timothy Sini, implemented, directed, and oversaw an investigation involving individuals who purchased Delta Level Defense CT4-2A Other Firearms from a federally licensed firearms dealer in Suffolk County.

44.     Commissioner Cameron, John Doe 1, Inv. LoRusso, and one or more of the John Does 1-10, are working in active concert with ADA Skiber, DA Sini and one another to knowingly and intentionally implement and enforce the Policy of criminalizing the purchase, possession, and ownership of the CT4-2A, to force the unlawful seizure of private property (the CT4-2A) under threat of arrest and prosecution, and to permanently seize and confiscate the CT4-2A.

45.     All individually named Defendants, identified and yet to be identified, are working in active concert with one another to implement and enforce the Policy, which is unreasonable under any view of the facts and law, without probable cause, justification or legal basis, without compensation for the loss of property, and lacks any semblance of due process.

46.     All individually named defendants, identified and yet to be identified, are working in active concert with one another to knowingly implement, direct, and participate in, a Policy that

is actively targeting innocent individuals who lawfully purchased and possess(ed) the Delta Level Defense CT4-2A Other Firearm from a Suffolk County FFL after they submitted to, and passed, a federal NICS criminal background check.

47. The intention and purpose of enforcing the Policy against Plaintiff and numerous other innocent and similarly situated people is to, *inter alia*, unreasonably and unlawfully seize property that was lawfully purchased, possessed, and owned, without compensation, and in the absence of due process.

48. All individually named defendants, identified and yet to be identified, know and have reason to know, that the possession of the Delta Level Defense CT4-2A Other Firearm does violate the Penal Law.

49. All individually named defendants, identified and yet to be identified, know and have reason to know, that the Delta Level Defense CT4-2A Other Firearm does not fall within the definition of "firearm", "pistol", "rifle", "shotgun" or "assault weapon" under federal or New York State law.

50. All individually named defendants, identified and yet to be identified, know and have reason to know, that the Delta Level Defense CT4-2A Other Firearm is not unlawfully sold, possessed, or purchased under federal or New York State law.

51. Each of the individually named defendants are continuing to work in active concert with one another to intentionally and maliciously deprive non-prohibited individuals, including Plaintiff of their lawfully owned, purchased, and possessed Delta Level Defense CT4-2A Other Firearms because all of the defendants have actual knowledge and are aware that the Delta Level Defense CT4-2A Other Firearm is not an illegal firearm under federal or New York State laws.

52.     Each of the individually named defendants are - at this moment - continuing to work in active concert with one another to intentionally and maliciously deprive more non-prohibited individuals of their lawfully owned, purchased, and possessed Delta Level Defense CT4-2A Other Firearms without compensation, due process, or probable cause.

**THE "LETTER" BEING USED TO ENFORCE AND IMPLEMENT THE POLICY**

53.     In May 2021, the individually named defendants, including John Doe 1 and John Does 2-10 personally and collectively agreed and implemented a procedure by which they would implement their unlawful policy by threatening the lawful purchasers of the CT4-2A with arrest of they did not allow Defendants to confiscate their property.

54.     By letter dated May 20, 2021, with the knowledge of each Defendant, at the direction of ADA Skiber, DA Sini, and Comm. Cameron, and working in active participation with all Defendants, Defendants informed hundreds of innocent individuals of the following:

> "The Suffolk County Police Department has recently conducted a criminal investigation and, as a result, is in receipt of information that you purchased a firearm from Jerry's Firearms and Supplies between November 2018 and November 2020. Based on the information received, the firearm that you purchased is **NOT**[1] in compliance with the New York State Penal Law. As such, we are requesting that you present said firearm for inspection **and disposition**[2] to the Suffolk County Police Department with in fifteen days of receipt of this letter.
>
> **Please be advised that <u>you will not be charged</u> with any crime(s) related to the purchasing of this firearm, <u>should you comply</u> with this request and present the firearm to the Suffolk County Police Department, pursuant to this letter. Be further advised, <u>however,</u> that <u>if you fail to present the weapon to the Suffolk County Police Department within the fifteen days allotted, you may be subject to arrest and criminal charges for your purchase and continued possession of said firearm</u>.**[3]

---

[1] Emphasis supplied.
[2] Emphasis added.
[3] Bold emphasis in the original; underlined emphasis added.

To arrange for the inspection of the firearm(s), or if you have any questions regarding this request, please contact the Suffolk County Police Department at (631) 853-7958, Monday through Friday between the l1ours of 9:00 am to 5:00 pm.

Thank you for your cooperation.
Sincerely,


Detective Lieutenant, C.O. 3410, DA Section
Suffolk County Police Department
30 Yaphank Avenue, Yaphank, NY 11980"


55.     The firearm referenced in the Letter is the Delta Level Defense CT4-2A.

56.     The Letter was not accompanied by a "Decline to Prosecute" letter or the like from the Suffolk County District Attorney's Office, DA Sini and/or ADA Skiber.

57.     It is well-established that law enforcement may lie and misrepresent information, both legal and factual, during the course of their job duties particularly when attempting to create a sense of urgency and/or obtain compliance with their objective.

58.     Defendants' Letter specifically states, "if you fail to present the weapon to the Suffolk County Police Department within the fifteen days allotted, you may be subject to arrest and criminal charges for your purchase and continued possession of said firearm."

59.     Neither Plaintiff nor any other innocent person who purchased, owns, and/or possesses a CT4-2A purchased from an FFL after a federal background check through NICS had any protection from being false arrested, incarcerated, and/or maliciously and criminally prosecuted.

60.     Defendants mailed a second batch of the same form Letter, reflecting a date of June 16, 2021, to hundreds of additional individuals who lawfully purchased, possess, and own the

Delta Level Defense CT4-2A and reside in counties outside of Suffolk County and in States outside of New York.

61.     Defendants know that there is no probable cause to obtain a search warrant to seize the CT4-2A because possession of the CT4-2A is not unlawful under New York State Law.

62.     Defendants are intentionally and falsely threatening, coercing, and scaring innocent people under threat of arrest and prosecution to coerce them into surrendering their property.

63.     Innocent people, including Plaintiff, who lawfully purchased, possess(ed), and own the CT4-2A are surrendering their CT4-2A to Defendants because they are being falsely induced and coerced by Defendants under threat of police power, arrest, and prosecution.

## PLAINTIFF RON WILSON

64.     Plaintiff is a resident of Nassau County, New York.

65.     Plaintiff lawfully purchased several Delta Level Defense CT4-2As from an FFL in Suffolk County approximately 1 year ago.

66.     Plaintiff has no prohibitors to the purchase, receipt, possession, or ownership of firearms under state or federal law.

67.     At each purchase transaction, Plaintiff completed ATF Form 4473 and underwent a federal background check through the National Instant Criminal Background Check System (NICS).

68.     With each purchase, Plaintiff was approved by NICS for the purchase of a Delta Level Defense CT4-2A.

69.     Plaintiff has owned and possessed his CT4-2As in a lawful manner, without incident since their purchase.

70.     Plaintiff has not misused or threatened the misuse of his CT4-2A or any other firearm.

71.     There is no allegation from any law enforcement agency that Plaintiff has misused or threatened the misuse of a firearm.

72.     In and around May 2021 to present, each of the individually named Defendants, acting in concert and individually, continued to implement and enforce their policy and procedure of divesting individuals who had purchased the Delta Level Defense CT4-2A from an FFL in Suffolk County after a federal criminal background check and approval through the NICS system of their property.

73.     At the direction of ADA Skiber, DA Sini, and Comm. Cameron, Inv. LoRusso and one or more of John Does 1-10 began calling CT4-2A purchasers to coerce and manipulate them to turn over their property to the SCPD.

74.     In addition to mailing the Letter, and in May 2021, Defendants Inv. LoRusso, John Doe 1, and/or one of the John Does 2-10 began calling and/or appearing at the homes of innocent people who lawfully purchased the CT4-2A from Jerry's Firearms.

75.     Inv. LoRusso and/or one of the John Does 1-10 called Plaintiff on the phone regarding the CT4-2As that he purchased from Jerry's Firearms.

76.     Defendants Inv. LoRusso, John Doe 1, and/or one of the John Does 2-10 informed Plaintiff that they needed to come to his home in Nassau County and take the CT4-2As that he purchased in Suffolk County.

77.     Inv. LoRusso, John Doe 1, and/or one of the John Does 2-10 falsely informed Plaintiff that his CT4-2A was 'illegal' under New York Law.

78. Plaintiff called back and informed Inv. LoRusso that he did not want the Suffolk County Police to come to his home, that he needed to speak with an attorney, that he had reservations about them coming to his home, that he had reservations about them taking his property, and that he needed to look into and obtain more information about their representations that his purchase and possession of the Delta Level Defense CT4-2A was illegal.

79. Inv. LoRusso informed Plaintiff, in substance, that they needed to come to his home right now, that he and other law enforcement officers were already on their way to his home in Nassau County, that they could "make things difficult" for him, falsely informed Plaintiff they could get a warrant, and could do things the easy way or the hard way.

80. Inv. LoRusso, and 2 other unidentified John Does, arrived at Plaintiff's Nassau County home.

81. Plaintiff laid out all the firearms that he owns, including the Delta level Defense CT4-2As that he purchased from the Suffolk County FFL.

82. Plaintiff's firearms included shotguns, a bolt action rifle, and his CT4-2A Others.

83. Certain that none of his firearms were illegal under New York State law, Plaintiff laid out all his firearms intending that they simply be visually inspected by Defendants.

84. When Inv. LoRusso, and 2 other unidentified John Does arrived at Plaintiff's home, they immediately went to inspect the CT4-2As; they ignored Plaintiff's remaining firearms.

85. Inv. LoRusso, and 2 other unidentified John Does had no search warrant, no seizure warrant, and no arrest warrant.

86. Inv. LoRusso and the 2 other unidentified John Does physically picked up Plaintiff's CT4-2As, physically inspected them, and then began to strip Plaintiff's CT4-2As of their scopes, tac lights, and all other lawful fixtures attached to Plaintiff's CT4-2As.

87.     Plaintiff did not give Defendants consent, permission, or authority to physically inspect or handle his CT4-2As.

88.     Plaintiff did not give Defendants consent, permission, or authority to alter his CT4-2As.

89.     Plaintiff did not give Defendants consent, permission, or authority to do anything other than visually inspect his firearms.

90.     Inv. LoRusso and the 2 other unidentified John Does showed Plaintiff a piece of paper and told him to sign it as they physically removed all of his CT4-2As and placed them into their van.

91.     Plaintiff did not consent to the seizure of his property.

92.     Defendants knew that they had no legal or factual grounds to obtain a warrant for the search of Plaintiff's home or the homes of any other similarly situated individuals

93.     Defendants knew that they had no legal or factual grounds to obtain a warrant to seize Plaintiff's CT4-2As or the CT4-2A of any other similarly situated individuals.

94.     Defendants knew that their seizure of Plaintiff's CT4-2As was unlawful and unreasonable by all standards.

95.     Plaintiff signed the paper under coercion, duress, threat of arrest, incarceration, criminal prosecution, and retaliation by Defendants.

96      Plaintiff's property was seized by Defendants by false pretenses and under coercion, duress, threat of arrest, incarceration, criminal prosecution, and retaliation by Defendants.

97.     Defendants seized all of Plaintiff's CT4-2As without his consent.

98. Defendants' seizure of Plaintiff's property was unlawful and violated his civil rights.

99. Defendants have divested and caused the divestiture of Plaintiff's property without just compensation.

101. Defendants seized and caused the seizure of Plaintiff's property without due process of law.

102. Defendants caused the unreasonable and unlawful seizure of CT4-2As from other similarly situated individuals, under false pretenses, without just compensation, under duress and threat of arrest, incarceration, and prosecution, and without due process of law.

103. The improper and knowingly false criminalization of the purchase, possession, and ownership of CT4-2A violates Plaintiff's constitutional rights and those of all similarly situated individuals, and caused irreparable harm to Plaintiff who has been deprived of his property, remains under the imminent threat of being arrested and charged with a crime, criminal prosecution, mandatory incarceration in state prison, substantial monetary fines, forfeiture of his Second Amendment right to possess firearms, irreparable harm to his personal and professional reputation and the unjust deprivation of his property without due process or just compensation.

104. Plaintiff desires to regain possession of his CT4-2As and to use them for lawful purposes including self-defense and target practice.

105. Plaintiff continues to live in fear that he will be arrested, incarcerated, prosecuted, and suffer the loss of additional civil rights by Defendants and those individuals acting in concert with them, including the permanent deprivation of his rights under the Second Amendment.

106. Plaintiff lives in fear of being criminally arrested, charged, and prosecuted under Defendants' implementation and enforcement of the Policy.

107.     Plaintiff requests that this Court: (1) declare that the Policy implemented and enforced by Defendants, which characterizes the Delta Level Defense CT4-2A Other Firearm as illegal contraband, violates the Second, Fourth, Fifth, and Fourteenth Amendments.

108.     Plaintiff further seeks a temporary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendants who receive actual notice of the injunction from continuing to possess Plaintiff's Delta Level Defense CT4-2A Other Firearm and the CT4-2As of all other similarly situated individuals and directing their return forthwith.

109.     Plaintiff further seeks a temporary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, and all persons acting in concert with Defendants who receive actual notice of the injunction from subjecting Plaintiff and all similarly situated individuals to arrest and/or prosecution for the mere purchase, possession and/or ownership of the Delta Level Defense CT4-2A until such time as this litigation and all related appeals have been exhausted.

110.     Defendants' conduct as described herein was undertaken knowingly, intentionally, willfully, wantonly, maliciously and in deliberate indifference to state and federal laws.

111.     Defendants were on actual notice in November 2020 that the Delta Level Defense CT4-2A was not illegal under state or federal law.

***The Delta Level Defense CT4-2A is Legal Under Federal and New York State Law***

### The 4 Mandatory Features of the CT4-2A Other Firearm

112.    The CT4-2A is a semiautomatic gun that has the following characteristics:

- A "forearm brace";
- A vertical foregrip;
- A barrel length over 12 inches;
- A second, vertical foregrip; and
- An overall length in excess of 26 inches.

### The CT4-2A is Not a "Firearm" as Defined by the New York State Penal Law or Federal Law

113.    Penal Law § 265.00, *et seq.* criminalizes the possession of "firearms" in New York State.

114.    Penal Law § 265.00(3) defines a "firearm" as:

"(a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon.  For the purpose of this subdivision the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Firearm does not include an antique firearm." § 265.00(3).

115.    Federal law defines "firearm" as:

"(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than

26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon." 26 U.S.C. § 5845 (a).

116.  The CT4-2A is not a "firearm" as defined by Penal Law 265.00 (3).

117.  The CT4-2A is not a "firearm" as defined by 26 U.S.C. § 5845 (a).

118.  The CT4-2A is not a "rifle".

119.  The CT4-2A is not a "shotgun".

120.  The CT4-2A is not a "pistol".

The CT4-2A is not "made from a shotgun or rifle".

121.  The CT4-2A does not have "an overall length of less than twenty- six inches".

## The CT4-2A is Not a "Rifle"
### as Defined by the New York State Penal Law or Federal Law

122.  Penal Law § 265.00 (11) defines a "rifle" as:

"a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger." § 265.00(11).

123.  Federal law defines a "rifle" as:

"a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger and shall include any such weapon which may be readily restored to fire a fixed cartridge." 26 U.S.C. § 5845.

124.    The CT4-2A Other is not a "rifle" as defined by New York State or federal law.

125.    The CT4-2A Other is not "designed or redesigned, made or remade, and intended to be fired from the shoulder."

126.    The CT4-2A does not have a "shoulder stock/buttstock".

**The CT4-2A is Not a "Shotgun"**
**as Defined by the New York State Penal Law or Federal Law**

127.    New York Penal Law defines a "shotgun" as:

> a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger."
> § 265.00 (12).

128.    Federal law defines a "shotgun" as:

> "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder, and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.."  26 U.S.C. § 5845(d).

129.    The CT4-2A is not a "shotgun" as defined by federal or New York State law.

130.    The CT4-2A is not a weapon "designed or redesigned, made or remade, and intended to be fired from the shoulder."

131.    The CT4-2A has a rifled barrel, not a smooth barrel like a shotgun.

**The CT4-2A is Not a "Pistol"**
**as Defined by the New York State Penal Law or Federal Law**

132.     The CT4-2A is not a pistol, revolver, or any other handgun.

133.     New York State does not have a definition for the term "pistol".

134.     The normal, customary, and common definition of the term pistol is a "handgun",

"a firearm designed to be held and fired with one hand."[4]

135.     Under 18 U.S.C. 921(a)(29), a "handgun" is a "firearm with a short stack and is

designed to be held and fired by the use of a single hand."

136.     27 C.F.R. 478.11 defines "pistol" as:

> "A weapon originally designed, made, and intended to fire a projectile (bullet)
> from one or more barrels when held in one hand, and having (a) a chamber(s) as
> an integral part(s) of, or permanently aligned with, the bore(s); and (b) a short
> stock designed to be gripped by one hand and at an angle to and extending below
> the line of the bore(s)."

137.     Pistols are made, designed, and intended to be held and fired with one hand.

138.     The CT4-2A is not made, designed, or intended to be held and fired with one

hand.

139.     The CT4-2A is not made, designed, or intended to be fired with one hand as

evidenced by the fact that the CT4-2A is specifically designed with a front vertical foregrip

intended to be used by a second hand. Additionally, the overall weight of the CT4-2A, combined

with the vertical foregrip creates a front-heavy imbalance, foreclosing any intention that it be

fired with one-hand.

---

[4] https://www.webster-dictionary.org/definition/Pistol

140.  Pistols are made and designed for concealment.

141.  The CT4-2A is not made, intended, or capable of being concealed on the person because it has an overall length exceeding 26 inches.

142.  The CT4-2A is not a pistol or revolver.

143.  The CT4-2A is not an "AR pistol" because it has a vertical foregrip. The "AR pistol" is equipped with either a hand stop or an angled foregrip.

## The CT4-2A is Not an "Assault Weapon"
## as Defined by the New York State Penal Law or Federal Law

144.  The CT4-2A is not an "assault weapon".

145.  Penal Law § 265.00, *et seq.* criminalizes the possession of "assault weapons".

146.  There are three types of "assault weapons" defined in the Penal Law: (i) semiautomatic rifles with certain characteristics; (ii) semiautomatic shotguns with certain characteristics; and (iii) semiautomatic pistols with certain characteristics.[5] § 265.00 (22).

147.  The CT4-2A does not fall within the definition of "assault weapon" under Penal Law § 265.00 (22) because it is not a "rifle", "shotgun" or "pistol".

148.  Because the CT4-2A is not a "rifle", "shotgun" or "pistol", it cannot be a "semiautomatic rifle with certain characteristics", a semiautomatic shotgun with certain characteristics" or a "semiautomatic pistol with certain characteristics."

---

[5] The term "semiautomatic" is defined as: "any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell." § 265.00(21).

**CT4-2A Other is Not "Any Other Weapon" As Defined by Federal Law**

149.    The CT4-2A does not fit within the definition of "any other weapon" under 26 U.S.C. 5845 (e).

150.    Under 26 U.S.C. § 5845 (e), "any other weapon" is defined as:

> "The term 'any other weapon' means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or a revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.

151.    The CT4-2A is not "any other weapon" because, *inter alia*, it is not made, capable, or intended to be concealed, it has a rifled bore, it is not designed, made, or intended to be fired from the shoulder, and it has an overall length exceeding 26 inches.

152.    Defendants were on actual notice in November 2020 that the Delta Level Defense CT4-2A did not fit the definition of a "firearm", "pistol", "rifle", "shotgun" or "assault weapon" under federal law or the New York Penal Law.

153.    Defendants' implementation and enforcement of the Policy, which persistently mischaracterizes the CT4-2A as "illegal" and their continued threats, intimidation, and unlawful attempts to seize and actual seizure of lawfully purchased and possessed firearms from non-prohibited individuals, like Plaintiff, warrants punitive damages as a matter of law.

154.    Defendants' seizure under false pretenses of Plaintiff's CT4-2As and those of similarly situated individuals knowing that the CT4-2A is not illegal to purchase, possess, or own under any provision of the Penal Law, warrants punitive damages as a matter of law.

155. Defendants' seizure under threat of unlawful entry into Plaintiff's home to seize his property, arrest, and prosecution, knowing that the CT4-2A is not illegal to purchase, possess, or own under any provision of the Penal Law, warrants punitive damages as a matter of law.

156. The individually named Defendants are not entitled to qualified immunity as their unlawful conduct was undertaken pre-arrest.

157. The individually named Defendants are not entitled to qualified immunity as their actions were not reasonable under any reading of the law.

158. The CT4-2A is being sold by FFLs throughout New York State and in 49 of the 50 United States and, upon information and belief, there is no other law enforcement agency that is arresting purchasers of the Delta Level Defense CT4-2A Other Firearm or confiscating the CT4-2A from non-prohibited, lawful purchasers for merely possessing the CT4-2A.

159. Defendants, including Suffolk County, constitute an outlier; by enforcing the Policy described herein they are not 'enforcing the Penal Law', they are enforcing Defendants' self-created policies and procedures, which are unreasonable and unconstitutional under any reading of the Penal Law.

### *Fourth Amendment Violation*

160. The Fourth Amendment provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

161. Defendants' policy of criminalizing the mere purchase, possession and/or ownership of the CT4-2A Other Firearm by individuals who have no prohibition to the purchase,

receipt, possession or ownership of firearms, like Plaintiff, violates Plaintiff's property rights and those of all similarly situated individuals.

162.    Defendants' unlawful seizure of Plaintiff's CT4-2A Other Firearms, which were lawfully purchased and possessed by Plaintiff, violates Plaintiff's rights to be free from unreasonable searches and seizures.

163.    Defendants' policy of criminalizing the possession and ownership of the CT4-2A Other Firearm, which was lawfully purchased and possessed by Plaintiff, violates the right of Plaintiff and all similarly situated individuals to be free from unreasonable seizures of their person.

### *Fifth Amendment Taking*

164.    The Takings Clause of the Fifth Amendment provides "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

165.    The Takings Clause applies against the states through the Fourteenth Amendment. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005).

166.    A regulation that "goes too far" by depriving the owner of its use or otherwise "interfering with legitimate property interests" requires just compensation. *Lingle*, 544 U.S. at 537-39.

167.    Neither a physical appropriation nor a public use is a necessary component of a taking. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 326 (2002).

168.    Defendants' policies and procedures have permanently deprived Plaintiff and similarly situated individuals of the use and possession of their property. See, *Duncan v. Becerra*, 742 F. App'x 218, 222 (9th Cir. 2018) (affirming grant of preliminary injunction finding that (1) the government "deprive[d] Plaintiffs not just of the use of their property, but of

possession, one of the most essential sticks in the bundle of property rights"; and (2) the government cannot use the police power to avoid compensation.) citing, *Lucas v South Carolina Coastal Council*, 505 U.S. 1003 (1992)., 505 U.S. at 1020-29, 112 S.Ct. 2886; *Loretto v Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (holding a permanent physical occupation authorized by the government is a taking without regard to the public interest it may serve.").

169.    Defendants' policies and procedures criminalizing Plaintiff's possession of lawfully purchased and possessed CT4-2As constitutes a forced, uncompensated, and permanent physical dispossession of property by the police.

170.    Defendants' involuntary seizure under threat of criminal prosecution that Plaintiff surrender his CT4-2As constitutes an uncompensated taking under the Fifth Amendment.

### *Due Process Violation*

171.    The Due Process Clause of the Fourteenth Amendment provides that "No state shall … deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV.

172.    "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); see also, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (collecting cases). Thus, a statute that deprives an individual of life, liberty, or property without furthering "any legitimate governmental objective" violates the Due Process Clause. *Lingle*, 544 U.S. at 542.

173.    Defendants' policies and procedures retroactively criminalize and deprive Plaintiff of lawfully acquired firearms in violation of the Due Process Clause.

174.     Police policies and procedures that change the law retroactively - making conduct that was legal when undertaken now illegal - is especially likely to run afoul of the Due Process Clause. See *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16-17 (1976); *E. Enterprs. v. Apfel*, 524 U.S. 498, 547-550 (1998) (Kennedy, J., concurring in part and dissenting in part). "If retroactive laws change the legal consequences of transactions long closed, the change can destroy the reasonable certainty and security which are the very objects of property ownership. Consequently, due process protection for property must be understood to incorporate our settled tradition against retroactive laws of great severity." *E. Enterprs.*, 524 U.S. at 548-49.

175.     A regulation that deprives an owner of private property without a permissible justification violates the Due Process Clause regardless of whether it also violates the Takings Clause. See *Lingle*, 544 U.S. at 541-42; id. at 548-49 (Kennedy, J., concurring).

176.     Because of Defendants' Policy, Plaintiff and other similarly situated individuals has been caused to suffer, *inter alia*, the loss of property without compensation, the loss of the use and enjoyment of property, stress and anxiety and the physical manifestations of the same living under the constant fear of being arrested and prosecuted for multiple counts of a violent felony offense, which require mandatory incarceration in state prison, the concomitant civil and criminal penalties, fear of the loss of employment and future employment opportunities, fear of the loss of professional business licenses, and the permanent loss of Second Amendment rights.

### AS AND FOR A FIRST CAUSE OF ACTION

177.     Plaintiff repeats and realleges as if set forth fully herein paragraphs 1 through 176.

178.     Defendants' policies and procedures subject Plaintiff to unlawful arrest and the unreasonable seizure of his person.

179.     Under the theory that Defendants are liable to Plaintiff for the violation of his Fourth Amendment rights under 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION

180.     Plaintiff repeats and realleges as if set forth fully herein paragraphs 1 through 179.

181.     Defendants' policies and procedures subjected Plaintiff to the unreasonable seizure of his property.

182.     Under the theory that Defendants are liable to Plaintiff for the violation of his Fourth Amendment rights under 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION

183.     Plaintiffs repeat and reallege as if set forth fully herein paragraphs 1 through 182.

184.     Defendant's policies and procedures subject Plaintiffs to the unjust taking of their private property without compensation.

185.     Under the theory that Defendants are liable to Plaintiff for the violation of his Fifth Amendment rights under 42 U.S.C. § 1983.

## AS AND FOR A FOURTH CAUSE OF ACTION

186.     Plaintiff repeats and realleges as if set forth fully herein paragraphs 1 through 185.

187.     Defendants' policies and procedures subjected Plaintiff to seizure, arrest and the unjust taking of his private property without pre-deprivation due process.

188.     Under the theory that Defendants are liable to Plaintiff for the violation of his Fourteenth Amendment right to pre-deprivation due process under 42 U.S.C. § 1983.

## AS AND FOR A FIFTH CAUSE OF ACTION

189.    Plaintiff repeats and realleges as if set forth fully herein paragraphs 1 through 188.

190.    Defendants' policies and procedures subjected Plaintiff to seizure, arrest and the unjust taking of his private property without post-deprivation due process.

191.    Under the theory that Defendants are liable to Plaintiff for the violation of his Fourteenth Amendment right to post-deprivation due process under 42 U.S.C. § 1983.

## AS AND FOR A SIXTH CAUSE OF ACTION

192.    Plaintiff repeats and realleges as if set forth fully herein paragraphs 1 through 190.

193.    Under the theory that, by creating, maintaining, enforcing, following, and/or applying the unconstitutional policies described herein, the County of Suffolk, New York is liable to the plaintiffs under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for violations of their constitutional rights as pled herein. 42 U.S.C. § 1983.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against the defendants as follows:

•    An Order preliminarily and permanently enjoining the defendant, its officers, agents, servants, employees, and all persons acting in concert with the defendants who receive actual notice of the injunction, from (i) from seizing, arresting, charging, and/or prosecuting the plaintiff and all those similarly situated for the mere possession, lawful use, and/or purchase of the CT4-2A Other Firearm pursuant to the Policy detailed herein and/or any agency policy, and/or procedure that deems the mere purchase, possession, and/or ownership of the Delta Level Defense CT4-2A by non-prohibited individuals to be illegal;

- A declaration that the Delta Level Defense CT4-2A Other Firearm is not a "firearm", "pistol", "rifle", "shotgun", or "assault weapon" as defined by Penal Law § 265.00, *et seq.*;

- Awarding the plaintiff compensatory and all other allowable damages in at least a nominal amount;

- Awarding the plaintiff compensatory damages for the loss of the use and enjoyment of his property;

- Awarding the plaintiff punitive damages against all individually named defendants;

- Awarding reasonable statutory attorney's fees, costs, and disbursements, under 42 U.S.C. § 1988 and any other applicable law; and

- Grant such further and alternative relief as the Court deems just and proper.

Dated: July 1, 2021
   Scarsdale, New York      THE BELLANTONI LAW FIRM, PLLC
                 *Attorneys for Plaintiff*

              _____/s/_____
              Amy L. Bellantoni (AB3061)
              2 Overhill Road, Suite 400
              Scarsdale, New York 10583
              abell@bellantoni-law.com
              (914) 367-0090 (t)
              (888) 763-9761 (f)
              abell@bellantoni-law.com