UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

RON WILSON,

                          Plaintiff,

    -against-

COUNTY OF SUFFOLK, TIMOTHY
SINI, MARY SKIBER, STUART
CAMERON, NICHOLAS LORUSSO, and
JOHN DOES 1-10,

                          Defendants.

-------------------------------------------------------------X

**MEMORANDUM
AND OPINION**
21-CV-3716(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this gun rights action arising under 42 U.S.C. § 1983 ("Section 1983") are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Before considering the merits of Plaintiff Ron Wilson's ("Plaintiff" or "Wilson") claims, however, it is important to understand what this case is not. This is not a Second Amendment case, seeking to invoke the more recent formulation of the right to bear arms addressed by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022), and its progeny. Rather, Plaintiff commenced this action against Defendants the County of Suffolk ("Suffolk County"), Timothy Sini ("Sini"), Mary Skiber ("Skiber"), Stuart Cameron ("Cameron"), Nicholas Lorusso ("Lorusso"), and 10 John Doe Defendants (collectively, "Defendants") asserting violations of his constitutional rights arising under the Fourth, Fifth, and Fourteenth Amendments based on the seizure of certain guns identified alternatively

as CT4-2As and DLDs, which he had allegedly lawfully purchased. *See* Complaint ("Compl."), Docket Entry ("DE") [1]. Although Wilson asserts separate causes of action, there is a single issue underlying all of them, namely, whether the CT4-2As were properly treated as contraband under the New York State Penal Law, subject to forfeiture without any constitutional protection. In fact, buried within five sets of Local Rule 56.1 statements, *see* DE [57-1], [57-27], [57-29], [58-1], [59-1], submitted as statements and counterstatements of uncontested facts, is the explanation that the CT4-2A was "manufactured with specifications that tend to get around technical aspects of certain gun laws." *See, e.g.*, County Defendants' Response to Wilson's Rule 56.1 Statement ("Cnty. Defs.' 56.1 Counterstmt."), DE [58-1], ¶ 121. The question is therefore whether the manufacturer was successful in its attempt to circumvent state law. The parties have filed cross-motions for summary judgment, both of which are opposed. *See* DE [57], [58], [59], [60]. For the reasons set forth herein, Defendants' motion is granted, Plaintiff's motion is denied, and the case is dismissed.

## I.    BACKGROUND

### A.    <u>Relevant Facts</u>

The facts are drawn from the pleadings, Wilson's Rule 56.1 Statement in Support of his Motion for Summary Judgment ("Wilson 56.1 Stmt."), DE [57-1]; Cnty. Defs.' 56.1 Counterstmt.; County Defendants' Rule 56.1 Statement in Support of Cross-Motion for Summary Judgment ("Cnty. Defs.' 56.1 Stmt."), DE [57-27]; Wilson's Rule 56.1 Counterstatement to Defendants' Cross-Motion for Summary Judgment ("Wilson 56.1 Counterstmt."), DE [57-29]; and Defendant Timothy Sini's Rule 56.1

Counterstatement and Statement of Additional Material Facts, ("Sini 56.1 Counterstmt."), DE [59.1]; as well as the admissible facts cited and relied upon in support of the various statements and counterstatements.[1]

    1.   <u>The Parties</u>

Wilson resides in Nassau County, New York, and legally owns several shotguns, bolt-action rifles, lever-action rifles, and semi-automatic rifles. Cnty. Defs.' 56.1 Counterstmt. ¶¶ 140, 142. Defendant Suffolk County is a municipal corporate subdivision of the State of New York and encompasses law enforcement officers, including the staff of the Suffolk County District Attorney's ("SCDA") office. *See* Compl. ¶ 6. At all relevant times, Sini was the Suffolk County District Attorney. *See* Cnty. Defs.' 56.1 Counterstmt. ¶ 44. Skiber was an Assistant District Attorney in the SCDA's office involved in an investigation and potential prosecutions related to the illegal sale of guns by non-party Jerry's Firearms ("Jerry's" or "Jerry's Firearms"), located in Bohemia, New York, as described below. *Id.* at ¶¶ 41-43. When the Complaint was filed, Defendant Cameron was the Acting Police Commissioner for the Suffolk County Police Department ("SCPD"), where he "create[d], enact[ed], and implement[ed] policies and procedures for the County of Suffolk . . . ." Compl. ¶¶ 9-10. Defendant Lorusso is "an investigator with the SCPD, . . . assigned to the District

---

[1] In response to a significant number of facts contained in Plaintiff's Rule 56.1 Counterstatement, Plaintiff neither admits nor denies the fact asserted, and instead states that the witness testified accordingly. *See, e.g.*, Wilson's 56.1 Counterstmt. ¶¶ 57, 160. This is not a proper response. *See* Local R. 56.1(b) ("The papers opposing a motion for summary judgment must include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party . . . ."). Accordingly, where a fact is not specifically denied, it is deemed admitted. *Id.*; *see Ortiz v. BK Venture Grp. Ltd.*, No. 22-CV-3766(SJB), 2024 WL 1308410, at *1 (E.D.N.Y. Mar. 27, 2024) (holding that a party moving for summary judgment must support its position by citing to admissible evidence from the record).

Attorney Section," whom Plaintiff claims "falsely informed" him (Wilson) that the firearm at issue in this action was illegal under New York Law." *Id.* at ¶¶ 11, 37, 77.

### 2. Relevant Firearm Classifications

"New York has long criminalized the possession of 'assault weapons.'" *Lane v. Rocah*, No. 22-CV-10989(KMK), 2024 WL 54237, at *1 (S.D.N.Y. Jan. 4, 2024) (citing N.Y. Penal Law § 265.02(7)). The manufacture of an assault weapon was prohibited by N.Y. Penal Law § 265.10 at all relevant times, and still is. *See New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 249 (2d Cir. 2015); N.Y. Penal Law § 265.10. During the applicable period, the N.Y. Penal Code defined an assault weapon as, *inter alia*:

> (a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the following characteristics . . . (ii) a pistol grip that protrudes completely beneath the action of the weapon; . . . (iv) a second handgrip or a protruding grip that can be held by the non-trigger hand; . . . [or] (vi) a flash suppressor[;] . . . or (c) a semiautomatic pistol that has an ability to accept a detachable magazine and has at least one of the following characteristics . . . (iii) a second handgrip or a protruding grip that can be held by the non-trigger hand; (iv) capacity to accept an ammunition magazine that attaches to the pistol outside of the pistol grip; . . . (vi) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the non-trigger hand without being burned; [or] (vii) a manufactured weight of fifty ounces or more when the pistol is unloaded[.]

N.Y. Penal Law § 265.00(22).

> Although the statute does not define a "pistol," it defines a "rifle" as:

> a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

*Id.* at § 265.00(11).

Finally, Federal law defines "[a]ny other weapon" as:

> any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire.  Such term shall not include a pistol or a revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.

26 U.S.C. § 5485(e).  The New York Penal Law does not specifically define "any other weapon" but incorporates the phrase in its definition of "firearm," stating that it is "any other weapon that is not otherwise defined in this section containing any component that provides housing or a structure designed to hold or integrate any fire control component that is designed to or may readily be converted to expel a projectile by action of explosive."  N.Y. Penal Law § 265.00(3).

### 3.    Facts Relevant To The Parties

A Federal Firearms License ("FFL") is a license that enables an individual or company to engage in a business pertaining to the manufacture or importation of firearms and ammunition, or the interstate and intrastate sale of firearms.  *See, e.g.*, 18 U.S.C. § 922.  In 2017, the SCPD investigated whether FFL holders in New York that were selling guns called Mosberg Shockwaves and Remington TAC-14s (the "TAC-14")—neither of which is directly at issue here—fall under the category of "any other weapon" as described under the federal statute above.    Wilson 56.1 Counterstmt. at ¶ 1.  On May 19, 2017, Sini issued an open letter to FFLs in Suffolk County stating that the Mosberg Shockwave and TAC-14 were lawful to possess and

sell in New York.  *Id.* at ¶ 2.  He wrote that these "Other Firearms" are not classified as "assault weapons" under N.Y. Penal Law § 265.00, and based on this conclusion, determined that the TAC-14 and the Mosberg Shockwave were neither a "firearm" nor "shotgun" as defined by N.Y. Penal Law § 265.00(3) and 26 U.S.C. § 5845, and consequently are unregulated under these statutes.  *Id.* at ¶¶ 7, 12, 151-54 (observing that Governor Hochul announced that such firearms are not subject to New York State regulation).

The FFL relevant to this action is Jerry's Firearms, located in Suffolk County, New York.  The specific firearm at issue in this action is the Delta Level Defense CT4-2A.  Cnty. Def.'s 56.1 Counterstmt. ¶¶ 15-17, 33.  Non-party Delta Level Defense manufactures and sells the CT4-2A to FFLs, including Jerry's, for retail sale.  *Id.* at ¶¶ 16, 33, 43, 51.  The CT4-2A is a semiautomatic gun with an overall length greater than 26 inches.  *Id.* at ¶ 17.  Plaintiff claims that every CT4-2A is manufactured and sold with the following four mandatory features that preclude it from being classified as a pistol or rifle:  (i) a forearm brace; (ii) a barrel length over 12 inches; (iii) an overall length greater than 26 inches; and (iv) a vertical foregrip as opposed to an angled foregrip.  *Id.* at ¶¶ 20-21.  Defendants counter that they "observed DLDs that were manufactured with overall barrel lengths as short as 10.5 inches" with "foregrips that were added post manufacture."  *Id.*  They assert that this renders the CT4-2A an unlawful assault weapon.  *Id.*

On September 29, 2020, an undercover police officer purchased a CT4-2A from Jerry's, after which, the gun was analyzed for compliance with New York State Law.

6

*See*, *e.g.*, *id.* at ¶¶ 54-61.  There is some dispute as to the validity of this analysis.  According to Plaintiff, the Suffolk County Crime Lab had the firearm evaluated by Roy Sineo, a "firearms expert" with Suffolk County for decades, certified as an expert in 88 Suffolk County Court criminal cases, who concluded that the DLD did not qualify as a pistol or rifle under New York Penal Law.  Wilson 56.1 Stmt. ¶¶ 60-69, 72-74.  Defendants disagreed with this conclusion, instead adopting the New York State Police ("NYSP") interpretation that the CT4-2A qualified as an assault pistol under New York law, and is therefore subject to forfeiture.  *See* Cnty. Defs.' 56.1 Counterstmt. ¶¶ 82-87, Ex. 7.

On December 28, 2020, Sini, as Suffolk County District Attorney, issued a "Prosecutorial Recommendation" regarding the CT4-2A as it related to sales by Jerry's Firearms (the "Prosecution Memo"), *see* DE [57-6], in which he stated, *inter alia*, "[w]e recommend that we charge, via felony complaints, the Corporation Jerry's Firearms and Supplies, and individually Jerry Rallo and his son Christopher Rallo, (owner and son/manager), for multiple counts related to the sale of the Delta Level Defense Model CT4-2A."  Wilson 56.1 Stmt. ¶ 129, Ex. 12.  The Prosecution Memo reasoned that "the DLD can be classified as an assault rifle and an assault pistol pursuant to P.L. 265.00(22)(a) and (c), respectively.  The DLD is therefore illegal to sell to a non-exempt individual in New York State."  *Id.*  The Prosecution Memo concluded:

> Based upon the ATF books and records recovered from Jerry's, we are aware that there are approximately 500 illegal DLDs sold and out on the streets. Most of the buyers are from Suffolk County, some are from Nassau County and a few are from upstate New York (one as far as

Ithaca). As was done in the past, teams of police personal [*sic*] may go out and recover all of these weapons. This task may present as an easier one than what was done in *People v. Chester Pergan* because we are aware that each one of these as sold is definitively an illegal weapon. As such, each weapon need not be inspected to determine the legality, only recovered.

*Id.*

### 4. Plaintiff's Firearms

Between 2020 and 2021, Plaintiff purchased more than a dozen firearms from Jerry's Firearms including several CT4-2As classified as "Other Firearms," rather than pistols or rifles. *Id.* at ¶¶ 18-19, 147-48. At the time of these purchases, possessing "Other Firearms" such as the CT4-2A was not prohibited under New York law. *Id.* at ¶ 151. Defendants counter that the CT4-2A functions as an assault pistol with numerous prohibited features. Cnty. Defs.' 56.1 Counterstmt. at ¶ 18. Defendants contend that its classification presents a legal question central to this case, asserting that the CT4-2A is both an assault rifle and an assault pistol under N.Y. Penal Law § 265.00(22)(a) and (c), thereby rendering it unlawful to possess. *Id.* at ¶¶ 18, 120, 127. Sini, as District Attorney, made the decision based on the Prosecution Memo recommending charges against the owners of Jerry's Firearms for selling the CT4-2A, which the memorandum characterized as an "assault weapon." *Id.* at ¶¶ 129-32.

On March 5, 2021, Jerry and Chris Rallo, the owners of Jerry's Firearms were charged with multiple felonies for selling the CT4-2A to an undercover officer, for selling the firearm generally, and for selling a CT4-2A firearm to Plaintiff. *Id.* at ¶

129.[2]  Relatedly, Defendants compiled a list of individuals who had purchased CT4-2As from Jerry's Firearms and sent letters to those customers, including Plaintiff. *Id.* at ¶¶ 130-31.  Attorneys in the SCDA assisted in drafting the letters.  *Id.* at ¶ 133. Between May 2021 and August 2021, the SCPD sent letters to purchasers informing them that the SCPD had conducted a criminal investigation, and which stated "you purchased a firearm from Jerry's Firearms and Supply between November 2018 and November 2020.  Based on the information received, the firearm that you purchased is **<u>NOT</u>** in compliance with the New York Penal Law."  *Id.* at ¶¶ 135-36 (emphasis in Cnty. Defs.' 56.1 Counterstmt.).  The letter warned that failure to surrender the firearm to the SCPD within fifteen days "may" result in arrest and criminal charges. *Id.* at ¶ 137.  Although the letter did not name the firearm, the only weapon targeted for seizure was the CT4-2A.  *Id.* at ¶ 138.

On April 28, 2021, Lorusso informed Wilson that his CT4-2A firearms were illegal to possess in New York and that the SCPD intended to seize them.  *Id.* at ¶ 165.  According to Defendants, Wilson's CT4-2As were needed as evidence in the prosecution against Jerry's Firearms.  *Id.* at ¶ 159.  Although Wilson was not arrested, Lorusso and two other police officers seized eight CT4-2As from his home. *Id.* at ¶ 156.  Wilson further claims that Lorusso implied he could be arrested for

---

[2] Jerry and Christopher Rallo ultimately pled guilty to reduced disorderly conduct charges and their business pled guilty to criminal possession of a weapon in the fourth degree and forfeited a total of $275,000, $40,000 of which was used to pay restitution and each purchaser of the CT4-2A – $400 per weapon.  Cnty. Defs.' 56.1 Stmt. ¶ 170.  Plaintiff objects this information coming into evidence.  *See* Wilson 56.1 Counterstmt. ¶¶ 168-70.  The Court does not rely on this evidence in making its decision.

possessing the CT4-2As, and that this belief was reinforced by the SCPD letter, which stated that noncompliance could result in his arrest.  *Id.* at ¶¶ 157-59.

### B. Procedural Background

By way of a Complaint filed July 1, 2021, Plaintiff commenced this action against Suffolk County, Cameron, Lorusso, Sini, Skiber, and 10 John Doe Defendants.  DE [1].  He asserts claims under Section 1983, including for violations of his: (1) Fourth Amendment rights for the "unlawful arrest and the unreasonable seizure of his person," Compl. ¶¶ 177-79, and "unreasonable seizure of his property," *id.* at ¶¶ 180-82; (2) Fifth Amendment rights for the "unjust taking of [his] property without compensation," *id.* at ¶¶ 183-85; and (3) Fourteenth Amendment rights based upon the "unjust taking of his private property without pre- or post-deprivation due process," *id.* at ¶¶ 186-91,  Plaintiff asserts that Suffolk County is liable pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978). *Id.* at ¶¶ 192-93.  The parties have filed cross-motions for summary judgment.  DE [57], [58], [59], [60].  For the reasons set forth herein, Defendants' motion is granted and Plaintiff's motion is denied.

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts

that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021) (*citing Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).  Each movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).  In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-CV-427(GTS)(TWD), 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment."). In contrast, "disputed legal questions . . . present nothing for trial and are appropriately resolved on a motion for summary judgment." *Flair Broad. Corp. v. Powers*, 733 F. Supp. 179, 184 (S.D.N.Y. 1990) ) (internal quotation omitted).

## III.    DISCUSSION

### A.    <u>Section 1983 Standard</u>

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To prevail on a claim arising under Section 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see Dubin v. Cnty.*

*of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

### B.    The Parties' Motions For Summary Judgment As To Liability

As set forth above, in considering whether Wilson properly invokes various civil rights, the underlying question is whether the CT4-2A was covered by the relevant provisions of the New York Penal Law, and therefore subject to forfeiture. In conducting this analysis, the Court rejects two preliminary arguments that Defendants advance.

Initially, Defendants take the position that because this issue requires consideration of a novel question of state law, the Court should decline to address it. *See*, *e.g.*, County Defendants' Memorandum of Law in Opposition to Motion and in Support of Cross-Motion ("Cnty. Defs.' Mem. in Opp'n"), DE [58-14], at 3-4, 8 (suggesting that the Court should decline consideration of this issue). This argument might gain some traction if there were a way to decide the parties' cross-motions without resolution of such an issue, but there is not. *See id.* at 6 ("Whether . . . the CT4-2A may be classified as an assault weapon is pivotal in the case."). This issue is at the heart of Plaintiff's claims, and so cannot be avoided.

The second argument is that when the County took Plaintiff's firearms, it did not amount to a seizure because the guns were to be used only as evidence in the prosecution against the Rallos. This argument is belied by the Prosecution Memo, which expressly characterizes the guns as assault weapons illegal to sell and subject to recovery and confiscation. *See* Declaration of Amy Bellantoni ("Bellantoni Decl.").

DE [57-6], Ex. 3.  Accordingly, the Court declines to rely on this argument as a basis to grant summary judgment.

These issues having been disposed of, the Court concludes that the CT4-2A qualifies as an assault pistol subject to lawful forfeiture.  New York law does not define the term "pistol."  Accordingly, there is no limitation in barrel length or overall length.  Despite Plaintiff's argument to the contrary, there is no basis to conclude that this lack of definition was anything other than intentional, given that, and as explained below, other states do define the term.  Further, and perhaps contrary to a common understanding that use of the term "pistol" is synonymous with "handgun," *see* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Wilson Mem."), DE [57-25], at 10, 15-17, 21 (citing Oxford Dictionary and other sources),  New York's anti-assault weapon statutory provision expressly recognizes that a pistol may have a second handgrip.  *See* N.Y. Penal Law § 265.00(22)(c)(iii).  The CT4-2A falls within these parameters.  And given that it accepts a detachable magazine, it qualifies as an assault weapon.  *See id.* § 265.00(c)(i)-(viii).  In reaching this conclusion, the Court notes that, although not binding, the NYSP reaches a similar conclusion applying the same reasoning.  *See* Bellantoni Decl. Ex. 7 (correspondence from New York State Police Deputy Counsel).  Moreover, reaching a contrary conclusion would require the Court to ignore the New York Penal Law's envisioning of these pistols with a second grip, an outcome the Court is unwilling to countenance.  *See Volokh v. James*, 148 F.4th 71, 95 (2d Cir. 2025) (holding that it

was improper to "read out of the statute" language that was "arguably central to the intended operation" of the applicable law).

As alluded to above, while other state statutes, such as Connecticut's or New Jersey's, may require a different conclusion, those statutes have different, specific definitions of the term "pistol."    In Connecticut, a "pistol" has a "barrel" less than twelve inches in length." *See* Conn. Gen. Stat. Ann. § 29-27.  In New Jersey a "pistol" is a handgun designed or manufactured to be fired using one hand.  *See* N.J. Stat. Ann. § 2C:39-1(k); *see also* 27 C.F.R. § 479.11 (federal regulation defining a pistol as a firearm to be fired when held in one hand).  Nevertheless, as Plaintiff recognizes, "[t]he plain language of Article 265 of the [New York] Penal Law . . . controls." *See* Plaintiff's Memorandum of Law in Opposition to County Defendants' Cross-Motion and in Further Support of Motion for Summary Judgment ("Wilson Reply Mem."), DE [57-26], at 1.[3]  Finally, the determination as to whether the Mosberg Shockwave or TAC-14 firearms were properly classified as "other firearms" outside the definition of "assault weapon," by law enforcement or otherwise is not before the Court.  Based on the above, summary judgment in Defendants' favor that the DLD qualifies as an assault pistol subject to forfeiture under the New York Penal Law is appropriate.

Although concluding that the DLD qualifies as an assault pistol is sufficient to determine the cross-motions, the Court addresses the related question of whether the

---

[3] Plaintiff's similar arguments are unpersuasive for similar reasons.  For example, while under some definitions a pistol may refer to a weapon "fired with one hand, *see* Wilson Reply Mem. at 12-13 (citing the Oxford English Dictionary), and that in other contexts, other courts, including the U.S. Supreme Court have referred to pistols and handguns interchangeably, *see id.* at 14-16 (citing *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008), the question before the Court is more narrow—does New York State apply the term "pistol" to the CT4-2A?—a question the Court now answers in the affirmative.

CT4-2A also qualifies as an assault rifle for a sake of a more complete record—a closer question. As set forth above, the term "rifle" is defined as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder . . . ." *See* N.Y. Penal Law § 265.00(11). Accordingly, the manufacturer's intent is relevant, and Plaintiff submits that there was no such evidence as to the CT4-2A. *See* Wilson Reply Mem. at 7-8 (citing Reply Declaration of Ryan Gisolfi ("Gisolfi Reply Decl."), DE [57-28]). On the other hand, a photo of the CT4-2A depicts a "pistol brace" that clearly could be used to support the weapon against the shooter's shoulder, bringing it within the definition of a rifle. *See* Bellantoni Decl. Ex. 18. Indeed, Wilson recognizes that the CT4-2A's surface area permits it to be fired from the shoulder. *See* Wilson Reply Mem. at 7 n.6. Then, there is conflicting evidence about whether the CT4-2A has optics, which it appears can only be used if the weapon is fired from the shoulder. *See* Cnty. Defs.' Mem. in Opp'n at 10. While this feature may undermine Plaintiff's representation about how the weapon is to be held, Wilson argues in reply that the evidence Defendants rely upon in this regard depicts a firearm other than the CT4-2A. *See* Wilson's Reply Mem. at 9 (citing *generally* Gisolfi Reply Decl.). Given these conflicting representations, the Court cannot determine whether the CT4-2A qualifies as an illegal assault rifle as a matter of law and declines to grant summary judgment on this issue.

Nevertheless, having determined that the CT4-2A qualifies as an assault pistol under New York law, the Court turns to whether Plaintiff has established a Section 1983 claim sufficient to defeat summary judgment.

1.    <u>Fourth Amendment Claim</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Carpenter v. United States*, 585 U.S. 296, 303, 138 S. Ct. 2206, 2213 (2018).[4]  Wilson asserts a claim arising under the Fourth Amendment for unlawful seizure of his CT4-2A firearm, which he claims he lawfully purchased and possessed.  Compl. ¶ 162.  He claims that "Defendants' policies and procedures subjected [him] to the unreasonable seizure of his property."  *Id.* at ¶ 181.

The Fourth Amendment prohibits unreasonable seizures; it is not a general prohibition of all conduct that may be deemed unreasonable, unjustified or outrageous."  *Orellana v. Cnty. of Suffolk*, No. 17-CV-4267(WFK), 2025 WL 481723, at *9 (E.D.N.Y. Jan. 2, 2025) (quoting *Medeiros v. O'Connell*, 150 F.3d 164, 167 (2d Cir. 1998)). The "first step in any Fourth Amendment claim (or, as in this case, any section 1983 claim predicated on the Fourth Amendment) is to determine whether there has been a constitutionally cognizable seizure."  *Id.*  The second step evaluates "whether the seizure was based on reasonable suspicion."  *Flowers v. TJX Cos., Inc.*, No. 91-CV-1339(HGM), 1994 WL 382515, at *3 (N.D.N.Y. July 15, 1994).  Relevant here, there is no cognizable Fourth Amendment interest in the possession of contraband.  *Illinois v. Caballes*, 543 U.S. 405, 408, 125 S. Ct. 834, 837 (2005); *United*

---

[4] Although Wilson alleges a Fourth Amendment claim based on a seizure and an unlawful arrest, he does not address the arrest theory of liability in any capacity in moving for or opposing summary judgment, and so the Court deems it abandoned.  *Torres v. Nat'l R.R. Passenger Corp. d/b/a Amtrak,* No. 13 Civ. 233(HB), 2014 WL 338739, at *2 (S.D.N.Y. Jan. 30, 2014) (granting summary judgment in favor of the defendant where the plaintiff "ha[d] not addressed or made any arguments in opposition to [the] [d]efendants' motion for summary judgment" on one of the plaintiff's claims).  In any event, Wilson concedes he was not arrested and this theory is not addressed further.

*States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004); *Domeneck v. City of New York*, 18 Civ. 7419(PGG), 2019 WL 5727409 at *8 (S.D.N.Y. Nov. 5, 2019).

As described above, Defendants correctly concluded that Wilson's CT4-2A firearms were illegal assault pistols that Wilson had no legal right to possess under New York law.  To this end, having determined that the CT4-2A was an unlawful assault pistol, Defendants lawfully seized the contraband that Wilson possessed.  *See, e.g.*, *Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 18, 23 (E.D.N.Y. 2013) (holding that the plaintiff's Fourth Amendment rights were not violated based upon the seizure of an illegal firearm).  Applying this standard, summary judgment in Defendants' favor is appropriate as to Wilson's Fourth Amendment claim.

### 2.    Fifth Amendment Claim

"The Takings Clause of the Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'" *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 550 (2d Cir. 2023) (quoting U.S. Const. amends. V, XIV, § 1).  Thus, "[a] property owner" may bring a "Fifth Amendment takings claim" under Section 1983 "when the government takes his property without paying for it." *Knick v. Twp. of Scott*, 588 U.S. 180, 185, 139 S. Ct. 2162, 2167 (2019); *see Mercedes-Benz Fin. Servs. USA, LLC v. City of New York*, 770 F. Supp. 3d 643, 661 (S.D.N.Y. 2025).  The law recognizes two types of takings: (1) "physical takings," which occur "[w]hen the government physically takes possession of an interest in property for some public purpose"; and (2) "regulatory takings," which involve "regulations that prohibit a property owner from making certain uses

of her private property." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321-22, 122 S. Ct. 1465, 1478 (2002). As Defendants physically seized Wilson's CT4-2A firearms, this matter involves the former.

While the Takings Clause protects personal property, a plaintiff must establish that the property at issue was taken for public use as opposed to some other purpose, such as a proper exercise of state police power. *See*, *e.g.*, *Sullivan v. Maha*, 834 F. App'x 619, 621 (2d Cir. 2020) (holding that the plaintiff could not state a claim where his pistol permit was suspended and his guns were confiscated because he failed to adduce evidence that the firearms at issue were taken for public use); *Brown v. Town of Amherst*, 23-CV-993(EAW), 2024 WL 4308310 *13 (W.D.N.Y. Sept. 26, 2024) (dismissing claim where property was not taken for "public use"); *accord Chyung v. City of Norwich*, 22-CV-712(MPS), 2023 WL 3289088 at *3 (D. Conn. May 5, 2023) (holding that where an officer steals or loses a citizen's property there was no public use sufficient to invoke the Fifth Amendment).

Defendants did not seize Wilson's firearms for "public use," and, as a result, his Fifth Amendment rights under the "Takings Clause" are not implicated. Rather, the seizure was an invocation of police power. *See AmeriSource Corp. v. U.S.,* 525 F.3d 1149, 1153 (Fed. Cir. 2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause."). Accordingly, his claim for alleged violation of the Takings Clause of the Fifth Amendment fails as a matter of law, and summary is granted in favor of Defendants on this cause of action.

3.    Fourteenth Amendment Claim

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  It therefore "bars arbitrary, wrongful government actions, and guarantees procedural fairness when a state action deprives a citizen of a protected interest in life, liberty, or property." *Wiesner v. Rosenberger*, No. 98-CV-1512(HB), 1998 WL 695927, at *3 (S.D.N.Y. Oct. 6, 1998).  "To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment," courts "identify the property interest involved, and "determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005).  The due process may not be invoked however to protect an alleged property interest in contraband. *See Oquendo v. City of New York*, 492 F. Supp. 3d 20, 29 (E.D.N.Y. 2020) (holding that a retired police officer had no due process/property right in contraband firearms).

The analysis above with respect to Plaintiff's claims arising under the Fourth and Fifth Amendments also demonstrates that Plaintiff's claim arising under the Fourteenth Amendment fails as a matter of law.  To this end, Wilson has no civil right in possessing a firearm that Defendants rightfully determined was an illegal assault weapon.  Accordingly, Defendants did not violate the Fourth or Fifth Amendments when they confiscated Wilson's illegal firearms.  These conclusions necessitate a finding that Defendants also did not deprive Wilson of his due process rights arising

under the Fourteenth Amendment. *See, e.g.*, *Marvin v. Peldunas*, No. 21-CV-1824, 2022 WL 2125851, at *1 (2d Cir. June 14, 2022) ("The Fifth Amendment's Due Process Clause states that no person shall 'be deprived of life, liberty, or property, without due process of law,' and the Fourteenth Amendment's Due Process Clause mirrors this language."); *Belton v. Cnty. of Nassau, New York*, No. 24-CV-2353(NJC)(JMW), 2024 WL 2977657, at *3 (E.D.N.Y. June 13, 2024) ("The Fourteenth Amendment due process claim 'merges with his Fourth Amendment claim because the former claim arises from the same set of actions that allegedly violated his Fourth Amendment rights.'"). Accordingly, summary judgment in Defendants' favor on this cause of action is appropriate as well.[5]

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied. The firearm at issue qualifies as a pistol and an assault weapon under the New York Penal Law and so the seizure at issue was lawful. Because the seizure was lawful, and Wilson has no cognizable interest in the possession of contraband, his Section 1983 claims fail as a matter of law. Accordingly, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court is directed to enter judgment in Defendants' favor and close this case.

---

[5] Having decided that Plaintiff's claims fail on the merits, the Court does not reach Defendants' defenses concerning prosecutorial immunity, qualified immunity and *Monell* liability.

Dated:    Central Islip, New York    **SO ORDERED**
          October 23, 2025

<u>/s/ Steven I. Locke</u>
STEVEN I. LOCKE
United States Magistrate Judge

22